### GREEFF et al. v. LEVISON et al.

(Supreme Court, Appellate Term.   June 22, 1903.)

1. ACTIONS—CAUSE—ASSIGNMENT.

Plaintiff alleged that defendants refused to accept a portion of goods purchased by them from K., to his damage, and that K. had assigned the cause of action therefor to him, but produced no written assignment. K. testified that he sold the goods as the agent of the manufacturer; that nothing was said as to whom payments should be made, but that the bills received by defendants showed that payments were to be made to plaintiff; that all accounts for goods sold by him were, under an agreement between himself and plaintiff, payable to plaintiff, but that, if defendants were not held liable, the manufacturer would be the loser. *Held*, that as no assignment was shown—there being nothing to bar a recovery on the same cause of action by K.—plaintiff could not maintain the action.

Appeal from City Court of New York, Special Term.

Action by Emil Greeff and others against Bernard Levison and another.   From a judgment for plaintiffs, defendants appeal.   Reversed.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and MacLEAN, JJ.

Otto Horwitz, for appellants.
Blumensteil & Blumensteil, for respondents.

FREEDMAN, P. J.   Briefly, the complaint in this action alleges that the defendants ordered a certain quantity of goods from one Rudolph Kraft, which amounted to the sum of $4,884.48, which order was accepted, and a portion of the goods delivered; that on July 11 and July 13 and July 14, 1898, the balance of said goods were duly tendered to defendants, refused by them, held by Kraft subject to the order of defendants, and subsequently sold by Kraft on account of defendants; and claimed that said Kraft was damaged in the sum of $1,240.27, and also alleged an assignment of said cause of action by Kraft to these plaintiffs.   Among the allegations in the answer was one expressly denying the assignment aforesaid from Kraft to plaintiffs.   Upon the trial, Kraft was sworn, and testified, in substance, that as agent of the firm of Griffon & Co., the manufacturers of the goods in suit, he sold the goods to a Mr. Hempstone, the buyer of the defendants.   He said the question was not raised as to whom the bills were to be paid; that the bills received by defendants showed that defendants were to make payments to the plaintiffs, Greeff & Co.; that all accounts for merchandise sold by him were under an agreement between himself and Greeff & Co., and were payable to Greeff & Co.; and subsequently, when recalled, he again testified "that, if the jury decides that these goods are wrongfully manufactured (that being one of the defenses interposed), the mill would stand the loss.   Greeff & Co. would not.   They are simply the bankers of Griffon & Co."   The "mill" meant Griffon & Co., who were the manufacturers of the goods.   The bill sent to defendants on July 13, 1898, has upon it the word "Payable to Greeff & Co."   One of July 9, 1898, says, "Consigned to Greeff & Co.," and "Consigned to Greeff & Co. by the Griffon Co."   When plaintiffs rested the record says, "Plaintiffs rest, except to prove the assignment."   Subsequently plaintiffs recalled one Kehoe, who testified to sales made by him of a portion of the goods in question to defendants' buyer, Hempstone; and Kehoe testifies:

"I was not a saleman for Greeff & Co.   I was general saleman for Rudolph Kraft's place of business.   Was with Greeff & Co., who were commission merchants.   Kraft was engaged in the business of acting as selling agent of the Griffon Company.   The goods in controversy were goods that were manufactured by this Griffon Company, and Kraft, as their agent, was selling them.   I was employed to assist him."

No assignment of the cause of action either from Kraft or Griffon & Co. was shown.   There is no claim made on this appeal by respondents that any such assignment was produced on the trial.   Their right to maintain this action is set forth in their brief as follows:

"The defendants made some point on the trial as to the right of the plaintiffs to bring this action.   We do not know whether they will raise any such question upon this appeal.   The fact that the plaintiffs were the owners of the account in question was fully proven upon the trial.   Mr. Kraft distinctly testified that he sold the goods, and that the account was payable to the plaintiffs.   In fact, he testified that all the accounts for goods sold by him were payable to the plaintiffs by written agreement.   In the second place, the bills for the goods sold, including the account in suit, were all payable, on their face, to Greeff & Co., and it was so stamped on the bills; the following words appearing on the bills: 'Payable to Greeff & Co.'   These bills were accepted by the defendants, and retained by them.   In fact, all through

the trial there is testimony showing that the account is payable to Greeff & Co. So there can be no doubt as to the right of the plaintiffs to bring this action."

The foregoing statement that "he testified that all the accounts for goods sold by him were payable to the plaintiffs by written agreement" will be seen, by reading Kraft's testimony, to refer to a "written understanding," as he expressed it, between himself and the plaintiffs, and not, as one would be led to believe by the brief, as one between himself and defendants. Although it is clear that defendants knew that their bills might be made payable to the plaintiffs, there is not a particle of testimony in the case to show that the defendants ever promised or agreed to make payments to Greeff & Co., or that Greeff & Co. are the real parties in interest. Kraft says that Hempstone, defendants' buyer, "knew to whom the bills were to be paid." That fact alone would not give plaintiffs a right of action. The record is barren of any testimony upon which a judgment in favor of these plaintiffs would bar an action for the same relief brought by Griffon & Co. The defendants insisted, by motion made to dismiss both at the close of the plaintiffs' case and at the close of the whole case, that plaintiffs had failed to show a cause of action against defendants, and, upon a denial of such motions, duly excepted thereto. The motion to dismiss should have been granted. For the reasons stated, it would have been error on the part of the trial judge to direct a verdict for the plaintiffs at the close of the case, and it was error to direct it nunc pro tunc at the time it was done. That being so, it is unnecessary to determine whether, if the plaintiffs' case had been free from the defect referred to, the trial judge, by implied consent of the parties, had the power, after the adjournment of the term at which the issues were tried, to set aside the general verdict rendered by the jury in favor of the defendants, and to direct a jury which had been discharged to render a verdict for the plaintiffs nunc pro tunc.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.